TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00131-CR







Michael Eugene Drone, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF MILAM COUNTY, 20TH JUDICIAL DISTRICT


NO. 18,525, HONORABLE CHARLES E. LANCE, JUDGE PRESIDING







PER CURIAM



 A jury found appellant guilty of murder and assessed punishment at imprisonment
for life and a $10,000 fine. Penal Code, 63d Leg., R.S., ch. 399, sec. 1, § 19.02, 1973 Tex.
Gen. Laws 883, 913, amended by Act of May 28, 1973, 63d Leg., R.S., ch. 426, art. 2, § 1,
1973 Tex. Gen. Laws 1122, 1123 (Tex. Penal Code Ann. § 19.02, since amended). 

 Appellant lived in a Cameron rooming house owned and managed by Elsie Haas
Fuller. Mrs. Fuller, who was eighty-eight years old, lived in a first-floor apartment in the
building. On February 1, 1993, a Cameron police officer went to Mrs. Fuller's apartment in
response to a report that she had not been seen or heard for several days. Finding the door
unlocked, the officer entered the apartment and found Mrs. Fuller lying dead on the living room
floor with a butcher knife protruding from her chest. The medical examiner testified that she had
suffered numerous stab wounds, some of which penetrated the heart, lungs, aorta, and liver. In addition, the body bore evidence of numerous blows to the head and arms by a blunt
instrument. The evidence indicates that the murder was committed on Friday night, January 29,
1993, which was the last time Mrs. Fuller was seen alive by anyone except her killer.


1. Scientific evidence.

 A bloody footprint was found on the linoleum floor just inside the front door of the
victim's apartment. A second footprint was found on a piece of carpet on the front porch after
the carpet was treated with a chemical that causes blood to fluoresce. A footprint expert testified
that the size and tread pattern of these footprints matched athletic shoes belonging to appellant. 
In addition, an expert in DNA analysis testified that blood found on these shoes belonged to the
deceased.

 In two points of error, appellant contends the district court erred by admitting in
evidence State's exhibit 12, vials of appellant's blood used in the DNA testing, and State's exhibit
55, a photograph of the bloody footprint on the carpet. Appellant argues that the two exhibits
were not properly authenticated. The requirement of authentication as a condition precedent to
admissibility is satisfied by evidence sufficient to support a finding that the matter in question is
what its proponent claims. Tex. R. Crim. Evid. 901(a).

 Cameron police office Dennis Richter testified that he took appellant to the office
of Dr. J.H. Allen to have a blood sample drawn. He identified exhibit 12 as the vials of blood
given to him by Dr. Allen's nurse. The nurse, Angie Short, testified that she drew blood from
a man brought to the doctor's office by Richter and identified her handwriting on the vials of
blood in exhibit 12. Short stated that the man from whom she drew this blood was identified as
Michael Drone, but she could not identify appellant in court. In his own testimony, appellant
acknowledged giving a blood sample. We find this evidence sufficient to support a finding that
exhibit 12 was what its proponent claimed it to be. That Short could not, one year later,
positively identify appellant in court went to the weight of the evidence, not its admissibility. 
Point of error two is overruled.

 We also find no error in the admission of exhibit 55, the photograph of the
footprint. A photograph may be authenticated by the testimony of any witness who has personal
knowledge that the particular item accurately represents the scene or event it purports to portray. 
Kephart v. State, 875 S.W.2d 319, 321 (Tex. Crim. App. 1994). Jill Hill, a forensic serologist
with the Department of Public Safety, testified that the photograph was taken at her direction and
in her presence, and that the photograph accurately displayed what was shown on the carpet in
her laboratory. This testimony was adequate to authenticate the exhibit. Point of error three is
overruled.


2. Hearsay testimony.

 Victor Gadison, another resident of the rooming house, testified that appellant once
told him during a conversation that the deceased kept a money bag in her apartment. In point of
error five, appellant contends this testimony was erroneously admitted over his hearsay objection. 
But an out-of-court statement by a party offered against the party is not hearsay by definition, and
is admissible as an admission by party-opponent. Tex. R. Crim. Evid. 801(e)(2)(A); Cunningham
v. State, 846 S.W.2d 147, 151 (Tex. App.--Austin 1993), aff'd, 877 S.W.2d 310 (Tex. Crim.
App. 1994). Point of error five is overruled.

 Appellant's sixth point of error also complains of the admission of alleged hearsay. 
Harold Hoffman, an inmate in the Milam County jail, testified that he heard an argument between
appellant and another inmate during which appellant said, "I will kill you, too." Like the
statement discussed in the previous paragraph, this was an admission by party-opponent and
appellant's hearsay objection was properly overruled. Point of error six is overruled.

 In a final hearsay point, appellant urges that the district court should not have
admitted the testimony of Dora Montez and James Wells concerning out-of-court statements made
by Shirley Ewing. Ewing, though married, was romantically involved with appellant. Ewing,
Montez, and Wells were employed at a Cameron nursing home. Montez and Wells testified to
statements they heard Ewing make at work during April 1993, about three months after the
murder.

 Wells testified that he overheard a conversation between Ewing and Arthur Ellison
after Ellison was questioned at the nursing home by a police officer. According to Wells, this
conversation went as follows: "She asked him, `Well, why was the laws here?' Then he say, `I
think they know about Mike.' She say, `Did you tell him the part about me washing the clothes
that night?' And he said `[N]o, he didn't say nothing.'" Montez testified that she, Ewing, and
several coworkers were discussing a newspaper article concerning the murder when Ewing said,
"I don't know why I washed those clothes for Michael. It felt like I killed the old woman
myself." (1) This testimony was hearsay. Tex. R. Crim. Evid. 801(d); see 2 Steven Goode, Olin
Guy Wellborn III, & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil and
Criminal § 801.2 (Texas Practice 2d ed. 1993) (hereafter cited as "Guide to Texas Rules")
(discussing various categories of hearsay). The district court ruled that the testimony was
admissible under the hearsay exception for statements against penal interest. See Tex. Penal Code
Ann. §§ 37.09, 38.05 (West 1994) (tampering with evidence, hindering apprehension). 

 A statement which at the time of its making so tended to subject the declarant to
criminal liability that a reasonable person would not have made the statement unless she believed
it to be true is admissible as an exception to the hearsay rule if corroborating circumstances clearly
indicate the trustworthiness of the statement. Tex. R. Crim. Evid. 803(24); Burks v. State, 876
S.W.2d 877, 904-05 (Tex. Crim. App. 1994); Davis v. State, 872 S.W.2d 743, 746-49 (Tex.
Crim. App. 1994); Cunningham, 846 S.W.2d at 149-50. This exception to the hearsay rule is
most commonly used by a defendant seeking to exculpate himself with evidence of an out-of-court
confession by a third party. But rule 803(24) recognizes the possibility that a statement against
the declarant's penal interest also may implicate the accused, and may be presented by the State
to inculpate the defendant. McFarland v. State, 845 S.W.2d 824, 835-36 (Tex. Crim. App.
1992); Lewis v. State, 856 S.W.2d 271, 274-75 (Tex. App.--Texarkana 1993, no pet.); 2 Guide
to Texas Rules § 803.29.

 To be admissible against the accused as a statement against penal interest, a
declarant's out-of-court statement inculpating the accused must be truly self-inculpatory as well. 
Williamson v. United States, 129 L.Ed.2d 476 (U.S. 1994) (interpreting Fed. Rule Evid.
804(b)(3)); Cofield v. State, 891 S.W.2d 952 (Tex. Crim. App. 1994) (interpreting rule 803(24)). 
Whether a statement is in fact against the interest of the declarant must be determined from the
circumstances of each case. Williamson, 129 L.Ed.2d at 484; Cofield, 891 S.W.2d at 956. For
example, a statement admitting the speaker's guilt and implicating another person in the same
crime, made while in custody, may be motivated by a desire to curry favor with the police and
hence fail to qualify as against the speaker's interest. On the other hand, the same words spoken
to an acquaintance may have no trouble qualifying for admission under the against-penal-interest
exception. Williamson, 129 L.Ed.2d at 484.

 Ewing's out-of-court statements admitting that she washed appellant's clothes on
the night of the murder were not made to the police while in custody, but to friends and coworkers
at her place of employment. There is nothing in the record to suggest that Ewing was thought to
be involved in the murder, even indirectly, at the time these statements were made. There is no
reason to suspect that Ewing made the statements in an attempt to curry favor with the authorities,
to minimize her culpability, or otherwise to serve her own self-interest. Under the circumstances
presented, we believe that Ewing would not have made the statements implicating herself in Elsie
Fuller's murder unless she believed them to be true. We conclude that Ewing's statements were
against her penal interest even though they also tended to inculpate appellant.

 To be admissible under rule 803(24), a statement against penal interest must be
corroborated by circumstances clearly indicating the trustworthiness of the statement. We have
written that the trustworthiness of a statement against penal interest is clearly indicated when: (1)
there is evidence independent of the statement itself that tends either directly or circumstantially
to establish the truth of the matter asserted by the statement, or (2) there is additional evidence
of the veracity of the declarant beyond that inherent in the potential for criminal liability, such as
proof that the statement was against the declarant's interest to an unusual or devastating degree,
that the declarant repeated his story often and consistently, or that he could not have been
motivated to falsify. Cunningham, 846 S.W.2d at 150. The Court of Criminal Appeals, while
stating that there is no definitive test by which to gauge the trustworthiness of a statement against
penal interest, has listed several factors that may be considered:


Any number of factors may be considered in this inquiry, including whether the
guilt of the declarant is inconsistent with the guilt of the accused, whether the
declarant was so situated that he might have committed the crime, the timing of the
declaration and its spontaneity, the relationship between the declarant and the party
to whom the declaration was made, and the existence of independent corroborating
facts. Further evidence which undermines the reliability of the statement . . . may
be considered, so long as the court is careful not to engage in a weighing of the
credibility of the in-court witness. The burden lies with the party seeking to admit
the statement, and the test is not an easy one; the evidence of corroborating
circumstances must clearly indicate trustworthiness.



Davis, 872 S.W.2d at 749. Obviously, the first two factors identified in Davis do not apply when,
as in this cause, a declarant's statement against penal interest is offered to inculpate the accused.

 When the State seeks to use a third party's out-of-court statement against penal
interest to inculpate the defendant, the corroboration issue is closely related to the question
whether the declarant's statement was truly self-inculpatory. As previously discussed, Ewing's
out-of-court statements were not the product of police questioning but spontaneous utterances to
friends and coworkers, and Ewing had no apparent selfish motive for making the statements or
any obvious reason to speak falsely regarding her connection to the murder of Elsie Fuller. In
addition, Ewing told of washing appellant's clothes following the murder at least twice, once
during the conversation overheard by Wells and again on the occasion described by Montez. (2) 
Montez testified that on the night she heard Ewing speak, Ewing was "very nervous, dropping
things, being real -- she wasn't herself." These circumstances clearly indicate that Ewing's self-incriminating statements were trustworthy. Insofar as Ewing's statements link appellant to the
murder of Elsie Fuller, they also were corroborated by the footprint and DNA evidence. The
district court did not err by admitting Ewing's out-of-court statements as statements against penal
interest pursuant to rule 803(24). Point of error seven is overruled.


3. Defense evidence.

 Through his own testimony and that of other defense witnesses, appellant sought
to discredit the testimony of the prosecution witnesses and to establish an alibi for the weekend
of the murder. In addition, appellant attempted to point the finger of guilt at Elisa Brazell, the
deceased's niece, and John Fuller, the deceased's nephew. Appellant offered testimony that the
deceased was angry with Brazell and had threatened to kill her. (3) With regard to Fuller, appellant
presented evidence that he purchased a car around the time of the murder and took blood-stained
clothes to the laundry following the murder. Appellant also sought to introduce a letter from
Fuller to a friend in Cameron which read in part:


 Believe me, it ain't easy being a white knight, not many dragons left to
slay. As far as my justifications for my actions. The car is going to be a joy to
drive, & I can't wait to start to work. I'm finally learning tickel'em teete'em [sic]. 
Now if we can only learn to fly.



The State's objection that the letter was not relevant was sustained, a ruling that is the subject of
appellant's ninth point of error.

 Appellant made no effort at trial to demonstrate the relevance of the letter and now
argues only that the letter "is certainly strange and with the facts surrounding this witness, it was
error for the trial Court not to allow its admission thus cutting off questioning in this matter." 
Unlike appellant, we do not find the relevance of the letter to be self-evident. Further, appellant
was permitted to question Fuller at length concerning Fuller's purchase of the automobile and its
financing. (4) Appellant also fully inquired into Fuller's whereabouts on the weekend of his aunt's
murder. (5) On this record, we cannot agree that the district court erred by excluding the letter from
evidence. Point of error nine is overruled.


4. Sufficiency of evidence.

 The thirteenth point of error is a challenge to the legal sufficiency of the evidence. 
Citing the defensive testimony, appellant argues that "[n]ot only did the Defense bring forth
evidence that the Appellant was not guilty, it also brought forth evidence that other persons may
have been involved." Appellant also argues that "absent the inadmissible testimony allowed in
by the trial Court, there is insufficient evidence to sustain the conviction." 

 The jury was the exclusive judge of the witnesses' credibility and the weight to give
their testimony. Tex. Code Crim. Proc. Ann. art. 36.13 (West 1981). Obviously, the jury found
the testimony of the State's witnesses more credible than that of the defense witnesses, and we will
not disturb that determination. Regarding the alleged inadmissible testimony, we have overruled
appellant's points of error complaining of the admission of the incriminating blood, footprint, and
hearsay, and appellant's argument would be without merit in any event. In determining the legal
sufficiency of the evidence to support a criminal conviction, the question is whether, after viewing
all the evidence in the light most favorable to the verdict, any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307 (1979); Geesa v. State, 820 S.W.2d 154 (Tex. Crim. App. 1991); Griffin v. State, 614
S.W.2d 155 (Tex. Crim. App. 1981). An appellant may not bootstrap himself into an acquittal
by arguing first that evidence was erroneously admitted and then that the erroneously admitted
evidence must be discounted in considering the sufficiency of the evidence to sustain the
conviction. Collins v. State, 602 S.W.2d 537 (Tex. Crim. App. 1980).

 We have detailed the principal incriminating evidence in our discussion of the
previous points of error. From this evidence, a rational trier of fact could find beyond a
reasonable doubt that appellant intentionally or knowingly caused the death of Elsie Fuller by
stabbing her in the chest with a knife. Point of error thirteen is overruled.


5. "Bolstering."

 Point of error four complains of the introduction in evidence of State's exhibit 61,
the curriculum vitae of David Bing. Bing was the expert who performed the DNA analysis of the
blood evidence and testified to the results. The document is nine pages long and details Bing's
education and professional activities. Appellant argues that the exhibit was irrelevant because
Bing had been qualified as an expert before the exhibit was offered and no attempt had been made
to challenge Bing's standing as an expert. Evidence is irrelevant if it serves the sole purpose of
convincing the factfinder that an unimpeached witness is worthy of credit, without substantively
contributing to make the existence of a consequential fact more or less probable than it would be
without the evidence. Cohn v. State, 849 S.W.2d 817, 819-20 (Tex. Crim. App. 1993). 

 The information in the curriculum vitae was not introduced for the sole purpose of
convincing the jury that Bing was worthy of belief. As appellant concedes, the information was
relevant to prove Bing's expertise, and thus to lay the predicate for his opinion testimony. 
Appellant further concedes that no error would have been presented if the exhibit had been
admitted in evidence a few minutes earlier, before the court recognized Bing as an expert. 
Indeed, Bing earlier testified to many of the facts contained in the curriculum vitae without
objection by appellant. Under the circumstances, this point presents no error or, at most,
harmless error. Tex. R. App. P. 81(b)(2); see Harris v. State, 790 S.W.2d 568, 587-88 (Tex.
Crim. App. 1989) (discussing application of harmless error rule). Point of error four is
overruled.


6. Extraneous offenses.

 In point of error ten, appellant contends the district court erred by permitting the
State to adduce evidence of an extraneous offense at the guilt phase of trial. During cross-examination, appellant was asked by the prosecutor if he gave a friend, Sam Brooks, ten dollars
on the afternoon of January 29, 1993. Appellant said that he did. When asked why, appellant
replied that the money was to purchase beer. The State then asked for and received a hearing
outside the jury's presence. The prosecutor informed the court that he had evidence that appellant
gave Brooks the ten dollars to purchase crack cocaine. Over appellant's objection, the court ruled
that the State would be permitted to adduce this evidence to impeach appellant's testimony.

 When the jury returned, the prosecutor asked appellant if he gave Brooks the ten
dollars to buy crack cocaine. Appellant said he did not. Later, the State called Sam Brooks as
a rebuttal witness. Over appellant's further objection, Brooks testified that appellant gave him
ten dollars on the afternoon in question, that he used the money to purchase crack cocaine, and
that he and appellant smoked the crack immediately thereafter. At the conclusion of Brooks's
testimony, the court instructed the jury at appellant's request that the testimony was admitted only
for the purpose of impeaching appellant's testimony and was not to be considered as evidence of
appellant's guilt of the charged offense.

 The court admitted the testimony regarding appellant's purchase and use of crack
cocaine on two theories of impeachment: (1) to contradict appellant's testimony that he gave
Brooks ten dollars to buy beer and (2) to demonstrate appellant's drug use as affecting his ability
to accurately recall the events about which he was testifying. We will address each of these
theories in turn.

 A party may not cross-examine a witness on a collateral matter, then contradict the
witness's answer. Shipman v. State, 604 S.W.2d 182, 183-84 (Tex. Crim. App. 1980). A matter
is collateral if the cross-examining party would not be entitled to prove it as part of his case
tending to establish his plea. Bates v. State, 587 S.W.2d 121, 133 (Tex. Crim. App. 1979). The
State made no effort to link appellant's drug use on the afternoon of January 29 with the murder
of Elsie Fuller, and we are unable to conclude that appellant's purchase and use of cocaine would
have been admissible as part of the State's case-in-chief. See Rogers v. State, 853 S.W.2d 29
(Tex. Crim. App. 1993); Garrett v. State, 875 S.W.2d 444 (Tex. App.--Austin 1994, pet. ref'd)
(discussing "same transaction contextual evidence"). By allowing the State to adduce evidence
of appellant's drug use to rebut his denial of such conduct during cross-examination, the State was
erroneously permitted to impeach appellant on a collateral matter.

 It has been stated that, to test a witness's capacity for correct observation, it may
be shown that the witness was intoxicated when the matter about which he testifies occurred. 
Kennedy v. State, 200 S.W.2d 400, 404 (Tex. Crim. App. 1947). On the other hand, the rules
of evidence provide: "Specific instances of the conduct of a witness, for the purpose of attacking
or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be
inquired into on cross-examination of the witness nor proved by extrinsic evidence." Tex. R.
Crim. Evid. 608(b). In Ramirez v. State, 802 S.W.2d 674 (Tex. Crim. App. 1990), a prosecution
for aggravated sexual assault, the victim's mother testified for the defense and stated that she was
unaware of any improper sexual activity involving her daughter and the defendant. On cross-examination, the prosecutor was permitted to question the witness about her heroin use. The court
held that this questioning was reversible error, citing rule 608(b) and rejecting the State's
argument that the witness's heroin use was proper impeachment under the Kennedy rationale. The
court noted, however, that there was no evidence that the witness was under the influence of
heroin at the time the events she described allegedly occurred. Thus, Ramirez leaves unanswered
the question whether the impeachment theory announced in Kennedy has survived the adoption
of rule 608(b).

 Assuming without deciding that proof of appellant's purchase and use of cocaine
violated rule 608(b), the error was harmless beyond a reasonable doubt. Tex. R. App. P.
81(b)(2); Harris, 790 S.W.2d at 587-88. After Brooks testified, no further evidence was adduced
on the subject of appellant's drug use. The subject was mentioned only in passing during the
State's jury argument. The evidence was not so inflammatory as to suggest the impossibility of
the jury following the district court's limiting instruction. Because we believe the extraneous
offense evidence did not disrupt the jury's orderly evaluation of the evidence, we overrule point
of error ten.

 Appellant also urges that extraneous offense evidence was improperly adduced
during the punishment phase of trial. Defense witness Larry Jackson testified that he had known
appellant most of his life and that, in his opinion, appellant was a peaceful and law-abiding
person. During cross-examination, the State asked Jackson if he "ever heard that [appellant] was
involved in a stabbing at the Alcoa Inn" and if he "heard about a complaint against [appellant]
made by a -- a woman here in Cameron for aggravated sexual assault." Appellant objected to
"these specific instances of conduct unless the State can show that there's been some kind of
conviction." Appellant now argues that the State was required to prove appellant's guilt of the
unadjudicated offenses beyond a reasonable doubt. Tex. Code Crim. Proc. Ann. art. 37.07, §
3(a) (West Supp. 1995).

 Appellant's contention on appeal does not comport with his trial objection and is
without merit in any event. The State was not attempting to prove appellant's commission of
unadjudicated offenses pursuant to article 37.07, but to test the weight of Jackson's character
testimony. A witness who testifies to the defendant's good character may be cross-examined
regarding relevant specific misconduct by the defendant. Reynolds v. State, 848 S.W.2d 785, 788
(Tex. App.--Houston [14th Dist.] 1993, pet. ref'd); Bratcher v. State, 771 S.W.2d 175, 186-87
(Tex. App.--San Antonio 1989, no pet.); Lancaster v. State, 754 S.W.2d 493, 495 (Tex.
App.--Dallas 1988, pet. ref'd); Tex. R. Crim. Evid. 405(a). (6) Appellant did not challenge the
factual basis of the State's questions at trial and there is nothing in the record to suggest that the
questions were asked in bad faith. Appellant's trial objection was correctly overruled. Point of
error eleven is overruled.



7. Jury misconduct.

 Appellant contends the district court erred by overruling his motion for mistrial,
and later his motion for new trial, based on juror misconduct. On the fourth day of this seven-day
trial, it was learned that a juror, Terrence Johnson, had given rides to and from the courthouse
to Nikki Blaylock, who had been subpoenaed by the State as a witness. Johnson and Blaylock had
also had lunch together. At a hearing outside the jury's presence, Blaylock testified that she did
not know that such conduct was improper and assured the court that she had not discussed the case
with Johnson. In chambers, Johnson admitted knowing that Blaylock was a potential witness but
said he did not realize that it was improper for him to fraternize with her away from the
courthouse. Johnson assured the court that he had not discussed the case with Blaylock, that
Blaylock had expressed no opinion regarding appellant's guilt, and that his association with
Blaylock would not affect his consideration of her testimony if she were called as a witness. 
Needless to say, the court vigorously admonished Johnson and Blaylock to have no further
dealings with each other during the course of the trial. 

 The court overruled appellant's motion for mistrial, citing the absence of evidence
that Johnson and Blaylock discussed the case. Blaylock did not testify before the jury. After the
trial was concluded, Johnson was ordered to serve thirty days in jail for contempt of court. 
Blaylock was also held in contempt and spent three days in jail.

 Appellant moved for new trial based on the unauthorized communications between
Johnson and Blaylock. Tex. R. App. P. 30(b)(7). In her testimony at the new trial hearing,
Blaylock continued to assert that she did not discuss any aspect of the case with Johnson. 
Blaylock said she had no further contact with Johnson after being admonished by the district
court. Johnson also testified that he never discussed the facts of the case with Blaylock. He
further testified that neither his association with Blaylock nor his conference with the court in
chambers influenced his deliberations as a juror. A second juror, Lanelle Fikes, testified that she
sat next to Johnson in the jury room and never heard him say anything to indicate that he had any
knowledge about the case other than what was brought out in the courtroom. In response to a
question by the court, Fikes stated that Johnson gave no indication of having been influenced in
any way by any outside communication.

 The rule against jurors conversing with unauthorized persons about a case is so
strong that injury to the accused is presumed. McMahon v. State, 582 S.W.2d 786, 793 (Tex.
Crim. App. 1978); Freeman v. State, 838 S.W.2d 772, 778 (Tex. App.--Corpus Christi 1992, pet.
ref'd). The presumption is rebuttable, however. If it is shown that the case was not discussed
or that nothing prejudicial to the accused was said, a new trial is not required. McMahon, 582
S.W.2d at 793; Freeman, 838 S.W.2d at 778. In light of the undisputed testimony that appellant's
case was not discussed during the unauthorized meetings between Johnson and Blaylock, the
district court did not abuse its discretion by overruling the motion for new trial and earlier motion
for mistrial. Point of error eight is overruled.

 In point of error twelve, appellant contends the court impermissibly discussed the
evidence in the case when ruling on the motion for new trial. Tex. R. App. P. 31(e)(2). 
Appellant refers to a statement by the court explaining that it was overruling the motion for new
trial because it found that Johnson and Blaylock did not discuss the case and that appellant was
not prejudiced by their unauthorized conversations. If the court's statement of its findings was
a violation of rule 31(e)(2), appellant is not entitled to relief because he neither alleges nor
demonstrates harm. Whitmore v. State, 570 S.W.2d 889, 892 (Tex. Crim. App. 1976); Tate v.
State, 834 S.W.2d 566, 571 (Tex. App.--Houston [1st Dist.] 1992, pet. ref'd). Point of error
twelve is overruled.


8. Change of venue.

 Finally, appellant contends the district court erred by overruling his motion for
change of venue. In the motion, appellant urged that newspaper and broadcast coverage of the
crime and of his arrest had created such a prejudice against him that a fair trial in Milam County
was impossible. Tex. Code Crim. Proc. Ann. art. 31.03(a)(1) (West 1989). The motion was
supported by the affidavits of appellant, his mother, and three other persons. The State filed two
controverting affidavits. 

 In their testimony at the hearing on the motion, appellant's affiants again expressed
the opinion that appellant could not receive a fair trial in Milam County. None of these witnesses,
however, had actually heard anyone in the community express the opinion that appellant was
guilty of the offense. The State's affiants also testified. According to them, this case had not
aroused an unusual amount of interest or discussion in the community. The State's witnesses
testified that they had neither seen nor heard anything to indicate a prejudice against appellant that
would prevent him from receiving a fair trial. 

 Copies of newspaper stories, transcripts of radio news broadcasts, and a videotape
of television news reports were admitted in evidence at the venue hearing. These stories and
broadcasts appear to be factually accurate accounts of the murder and subsequent investigation,
and of appellant's arrest, indictment, and initial court appearances. The most recent of these news
accounts reported the upcoming hearing on appellant's motion for change of venue.

 The change of venue hearing was conducted on September 10, 1993. Jury selection
began on January 24, 1994, and took less than a day. Although the district court had indicated
that it would reconsider the change of venue request following jury selection, appellant did not
ask the court to do so. Appellant does not contend that selecting a jury was unusually difficult.

 A defendant seeking a change of venue bears a heavy burden to prove the existence
of such prejudice in the community that the likelihood of obtaining a fair and impartial jury is
doubtful. Narvaiz v. State, 840 S.W.2d 415, 428 (Tex. Crim. App. 1992). A motion for change
of venue is addressed to the discretion of the trial court and an appellate court may reverse only
for an abuse of discretion. Id. The trial court's decision will not be disturbed so long as it is
within the realm of reasonableness given the record that was before it. Id. On this record,
appellant has not shown the district court abused its discretion by overruling the motion for change
of venue. Point of error one is overruled.

 The judgment of conviction is affirmed.



Before Chief Justice Carroll, Justices Aboussie and Jones

Affirmed

Filed: August 23, 1995

Publish
1. Ewing testified at trial and denied making the statements attributed to her by Montez and
Wells. Ellison and other coworkers also testified that they did not hear Ewing make the alleged
incriminating statements. In determining the admissibility of a statement against penal interest,
a court must not weigh the credibility of the in-court witnesses. Davis v. State, 872 S.W.2d 743,
749 (Tex. Crim. App. 1994). Therefore, we will take the testimony of Montez and Wells at face
value in deciding this point of error.
2. It is not clear from the record whether Ewing made the statements overheard by Wells and
Montez on the same or different dates.
3. Brazell testified that she and her aunt had a good relationship and denied that they argued
during the days preceding the murder. Brazell and a friend testified without contradiction that
Brazell was visiting the friend in Austin on the weekend of the murder.
4. It was shown that Fuller purchased the car on the weekend preceding his aunt's murder. 
He made the down payment with money obtained by pawning property loaned to him for this
purpose by the person to whom the letter was written.
5. The uncontradicted evidence is that Fuller spent the evening of January 29, 1993, with his
friend in Cameron. He left town the next day and returned to his home in Tyler.
6. Because Jackson was an opinion witness, the prosecutor arguably should have asked him
if he knew of the incidents in question rather than if he had heard of them. Reynolds, 848 S.W.2d
at 788; Bratcher, 771 S.W.2d at 187; Lancaster, 754 S.W.2d at 495; 1 Guide to Texas Rules §
405.2.4.